(No. 22395.—)

The Moweaqua Coal Corporation, Defendant in Error, *vs.* The Industrial Commission *et al.*—(Mary Ondes, Plaintiff in Error.)

*Opinion filed April 17, 1935.*

Herrick, J., dissenting.

George W. Dowell, Leal W. Reese, Ora P. Tuttle, D. W. Johnston, C. C. Dreman, and Nobel Y. Dowell, for plaintiff in error.

Thomas P. Sinnett, and W. C. Ropiequet, for defendant in error.

Will R. Kee, and Lan Haney, (Daniel D. Carmell, of counsel,) *amici curiæ.*

Per Curiam: This cause is here on writ of error to review the judgment of the circuit court of Shelby county setting aside an award of the Industrial Commission and entering an award upon the record. The facts are not disputed. The only question presented is as to the proper amount to be awarded under the Workmen's Compensation act.

George Ondes on December 24, 1932, while in the course of his employment in defendant in error's coal mine, was killed by an explosion. He left him surviving a widow

and children, two of whom were under the age of sixteen years at the time of his death. On the application of his widow for compensation the arbitrator awarded as such compensation $4800, payable at the rate of $12 per week for 400 weeks. This award was confirmed by the Industrial Commission. On *certiorari* the circuit court set aside the award and awarded the sum of $4040, payable at $12 per week for 336⅔ weeks. The earnings of Ondes during the year next preceding his death were $1010. Plaintiff in error contends that under sub-paragraph (*h*)-3 of section 7 of the Workmen's Compensation act she is entitled to $4800.

Section 7 of the act, so far as necessary to be considered here, is as follows:

"Sec. 7. The amount of compensation which shall be paid for an injury to the employee resulting in death shall be:

"(*a*) If the employee leaves any widow, child or children whom he was under legal obligation to support at the time of his injury, a sum equal to four times the average annual earnings of the employee, but not less in any event than two thousand five hundred dollars and not more in any event than four thousand dollars. * * *

"(*h*) 1. Whenever in paragraph (*a*) of this section, a minimum of two thousand five hundred dollars is provided, such minimum shall be increased in the following cases to the following amounts:

"Three thousand dollars in case of one child under the age of sixteen years at the time of the death of the employee.

"Three thousand one hundred dollars in case of two children under the age of sixteen years at the time of the death of the employee.

"Three thousand two hundred dollars in case of three or more children under the age of sixteen years at the time of the death of the employee.

"2. Whenever four times the average annual earnings of the deceased employee as provided in paragraph (*a*) of

this section amounts to more than two thousand five hundred dollars and to less than four thousand dollars, the amount so payable under said paragraph shall be increased as follows:

"In case such employee left surviving him one child under the age of sixteen years the amount so payable shall be increased three hundred fifty dollars.

"In case such employee left surviving him two children under the age of sixteen years the amount so payable shall be increased four hundred fifty dollars.

"In case such employee left surviving him three or more children under the age of sixteen years the amount so payable shall be increased six hundred dollars.

"3. Whenever in paragraph (a) of this section a maximum of four thousand dollars is provided, such maximum shall be increased in the following cases to the following amounts:

"Four thousand four hundred fifty dollars in case of one child under the age of sixteen years at the time of the death of the employee.

"Four thousand eight hundred dollars in case of two children under the age of sixteen years at the time of the death of the employee.

"Five thousand five hundred dollars in case of three or more children under the age of sixteen years at the time of the death of the employee." Cahill's Stat. 1931, chap. 48, sec. 207, pars. (a) and (h), pp. 1406, 1407.

Sub-paragraphs 1 and 3 of paragraph (h) of section 7 were added to the act by an amendment of July 1, 1919, as (h)-1 and (h)-2. (Laws of 1919, p. 541.) Sub-paragraph 2 of paragraph (h) was added to the act by amendment of July 2, 1927. (Laws of 1927, p. 502.) By this amendment original sub-paragraphs (h)-1 and (h)-2 were re-enacted except as to maximum and minimum amounts, and (h)-2 became (h)-3. In 1931 sub-paragraphs (h)-1 and (h)-3 were again amended by increasing the maximum

and minimum but without further change. (Laws of 1931, pp. 580, 581.) It is conceded by counsel on both sides that paragraph (*a*) of section 7 is modified by sub-paragraphs (*h*)-1, (*h*)-2 and (*h*)-3 of that section.

Prior to the amendment of 1919 the Workmen's Compensation act made no provision for increase in awards in death cases because of children under the age of sixteen years. Sub-paragraphs (*h*)-1 and (*h*)-3 as enacted in 1919 and as re-enacted since, provide only for increasing the minimum and maximum, respectively, of awards, over the minimum and maximum fixed by paragraph (*a*) of section 7. Sub-paragraph (*h*)-2 as enacted in 1927 and as amended since, provides a specific amount of compensation in the cases therein fixed in addition to "the amount so payable" derived from computing four times the average annual income. Sub-paragraphs (*h*)-1 and (*h*)-3 have at no time contained a provision for the addition of any specific amount to the award provided in paragraph (*a*), but have, and have had, to do only with an increase of "such minimum" and "such maximum." Before the addition of sub-paragraph (*h*)-2 in 1927 there was nowhere in section 7 a provision for the addition of any specified sum to the award as determined under paragraph (*a*) of section 7. While sub-paragraph (*h*)-2 was amended in 1929 (Laws of 1929, p. 446,) by increasing the amount to be added to the award and by adding a clause, it in no way deals with or changes the maximum or minimum fixed in paragraph (*a*) but has at all times dealt only with specific amounts to be added to a sum four times the average annual earnings of the deceased employee where such sum falls between the minimum and maximum prescribed in paragraph (*a*). It is thus clear that the subject matter of sub-paragraph (*h*)-2 is not the same as that dealt with in sub-paragraphs (*h*)-1 and (*h*)-3.

Plaintiff in error contends that whenever four times the average earnings of a deceased employee on account of

whose injury and death a liability is incurred amounts to or exceeds the maximum of $4000 stated in paragraph (a), the award provided by sub-paragraph (h)-3 is $4800 if such employee left a widow and two children under the age of sixteen years. Defendant in error on the other hand contends that the award provided by sub-paragraph (h)-3 under such circumstances is four times the average annual earnings but in no event more than $4800. Its counsel argue that the word "maximum" as used in sub-paragraph (h)-3 must be given its ordinary meaning, which, they say, is the "highest amount obtainable." Plaintiff in error's counsel argue that while the word "maximum" means the highest amount obtainable, it is to be construed here as meaning the highest amount obtainable where there are no children under sixteen years of age.

It is a long recognized and frequently announced canon of construction that unambiguous words in a statute are to be construed in accordance with their ordinary use and meaning, or when they have a well-settled meaning through judicial interpretation such meaning is to be adopted when those words are used in a statute. (*Trustees of Schools* v. *Berryman*, 325 Ill. 72; *In re Manaca*, 146 Mich. 697, 110 N. W. 75; *Poolman* v. *Langdon*, 94 Wash. 448, 162 Pac. 578.) As was said by this court in *Murrell* v. *Industrial Com.* 291 Ill. 334: "The words of a statute will be construed in their ordinary sense and with the meaning commonly attributed to them under such construction unless such construction will defeat the manifest intention of the legislature. When the words have a well-settled meaning through judicial interpretation, they must be understood, when used in a statute, to have that meaning unless a different meaning is unmistakably indicated." So in *People* v. *Patten*, 338 Ill. 385, it was said: "The intention of the legislature is manifested by, and must be ascertained from, what it has said in the act construed, and not from some-

thing the court might surmise the legislature might have intended to say but which it for some reason failed to say." When the meaning of the language of a statute is plain, courts are not privileged to attribute to it a different construction though they may be of the opinion that the language was unwise or seriously impairs the act as a whole. (*People* v. *Beekman & Co.* 347 Ill. 92; *Downs* v. *Curry,* 296 id. 277.) It is likewise a rule of construction that when words appear more than once in a statute it will be presumed that the General Assembly intended to attribute to them the same meaning throughout, unless there is something to show that a different meaning was intended. (*Board of Education* v. *Morgan,* 316 Ill. 143.) It is also the rule that a primary purpose in construing a statute is to ascertain the intention of the General Assembly, and in so doing it is necessary and proper to consider the purpose of the law and the object to be accomplished. Where absurd consequences result from a particular construction such construction will be avoided if the statute will reasonably permit of a different construction. (*Patterson Pie Co.* v. *Industrial Com.* 335 Ill. 476; *People* v. *Brundage,* 296 id. 197; *City of Chicago* v. *Mayer,* 290 id. 142.) Though an inconsistency may result, courts cannot, where there is no ambiguity in the language used, construe the statute as having a meaning different from that plainly to be gathered from the words used. *People* v. *Shader,* 326 Ill. 145; *People* v. *Beekman & Co. supra; Downs* v. *Curry, supra.*

There is, so far as we are advised, neither difference in nor shades of meaning given by lexicographers and the courts to the word "maximum." It is universally defined to mean the highest or greatest amount, quality, value or degree. Webster's New Int. Dict.; Century Dict. 1913 ed.; 6 Oxford Dict. 1908, p. 254; Funk & Wagnalls New Standard Dict.; *Trustees of Schools* v. *Berryman, supra; In re Manaca, supra; Poolman* v. *Langdon, supra.*

It will be observed that by sub-paragraph (*h*)-1 "such minimum shall be increased in the following cases to the following amounts," and by sub-paragraph (*h*)-3, "such maximum shall be increased in the following cases to the following amounts." It seems clear that by the words "such minimum" and "such maximum" are meant only the minimum and maximum provided in paragraph (*a*) of section 7 based on a computation of four times the annual earnings of the employee. It must follow, therefore, that the greatest or highest award that can be made under sub-paragraph (*h*)-3 where there are two children under the age of sixteen years is $4800. In other words, that is the most that can be given by the application of the formula prescribed by paragraph (*a*) of section 7 as modified by sub-paragraph (*h*)-3. It also unescapably follows that to authorize an award of $4800 under these provisions the deceased employee leaving two children under the age of sixteen years must have had an average annual earning of $1200 or more. In other words, the thing increased by sub-paragraph (*h*)-3 is "such maximum"—that is, the maximum fixed by and in the manner prescribed in paragraph (*a*) of section 7. The effect of sub-paragraphs (*h*)-1 and (*h*)-3 is to cause paragraph (*a*) of section 7 to be read as though it contained the following words: The amount of compensation which shall be paid for an injury to an employee resulting in his death who leaves a widow and two children under sixteen years of age shall be a sum equal to four times the annual earnings of the employee, but not less in any event than $3100 and not more in any event than $4800. It is only by determining the meaning of the terms "such minimum" and "such maximum" that a true construction of section 7 as a whole may be reached. The minimum and maximum of paragraph (*a*) of section 7 are based solely on the formula of four times annual earnings. They apply to nothing else. No specific amount or amounts payable in any given case are there provided, but

the award is to depend upon the facts, including not only the number of children under sixteen years of age but also the amount of average annual earnings.

Counsel in support of their contention that the award here should be $4800 argue that the existence of children under the age of sixteen years is the only reason for the increase in compensation; and this is true, but the language of the statute must be examined to determine what is increased, and whether by the act it is intended that an additional specified sum shall be added to the maximum or minimum in a given case where there are children under sixteen, or whether it is the maximum or the minimum under the formula prescribed for making the award which shall be increased. It seems too clear to admit of argument that under sub-paragraph $(h)$-3 the thing increased is the maximum, and while it may be said that an increase in the maximum would not have occurred but for the existence of children under sixteen years of age, yet the reason for the increase cannot be said to be a definition of what was increased, where the act, as here, specifically provides, because of the existence of such children, not a certain specified sum to be added to the award, as in sub-paragraph $(h)$-2, but an increase in the maximum that may be allowed. It will be observed that sub-paragraph $(h)$-3 does not prescribe that there shall be added to the award the sum of $450 or $800 or $1500, but increases "the maximum to the following amounts"—$4450, $4800 and $5500.

Counsel for plaintiff in error call attention to inconsistencies which they say will arise from the application of this construction when compared with the provisions of sub-paragraph $(h)$-2. They set out a case where the widow of an employee whose earnings were just below $1000 per year, so that four times such earnings is just below $4000, to-wit, $3999, would under sub-paragraph $(h)$-2 receive more compensation than the widow whose husband earned $1000 per year, or, as in this case, $1010. They point out

that the award to the widow first referred to is by sub-paragraph $(h)$-2 increased $450, making the total award $4449, whereas in this case four times the annual earnings of Ondes amounts to $4040, and under defendant in error's contention his widow receives $4040, or $409 less than the widow of an employee whose annual income was under $1000. It may be also observed that if plaintiff in error's construction of sub-paragraph $(h)$-3 is the sound one and Ondes' widow is to receive $4800, she would under that construction receive $351 more than the widow first referred to in the comparison though there is less than $11 difference in the annual earnings in the two cases. The inconsistency arising between a case such as this and the supposed case is because of the provisions of sub-paragraph $(h)$-2, which, as we have seen, deal with a specific sum to be added rather than with the maximum or minimum. There is, and has been, in sub-paragraph $(h)$-2 nothing to indicate that the legislature intended a different construction to be placed on the words "such minimum" or "such maximum." On the contrary, the provisions of sub-paragraph $(h)$-2, as we have pointed out, increase "the amount so payable" by a specific sum "whenever four times the average annual earnings" falls between the minimum and maximum provided by the act. It may be further observed that we are here dealing with the construction of sub-paragraph $(h)$-3 and not $(h)$-2. The latter has no application here.

Counsel on both sides concede that the question here presented has never been squarely before this or any other court. Both sides, however, cite *Patterson Pie Co.* v. *Industrial Com. supra,* as supporting their reasoning. In that case the court held that the weekly compensation for an injury not resulting in death, where the employee has four children under sixteen years of age and makes $18 per week, should under sub-paragraph $(j)$-2 of section 8 be $14 per week notwithstanding sub-paragraph $(j)$-1 of sec-

tion 8 provided that the payment should be sixty-five per cent of the weekly wage. It was held that sub-paragraph (*j*)-2 of section 8 raised the minimum of the weekly compensation in a case such as there under consideration to $14, and this though sixty-five per cent of the weekly wage did not amount to $14. The matter there under consideration was the minimum or the least amount that could be paid for injury not resulting in death, under the act as there construed. We are unable to see wherein that case is of aid in the case before us. Where there is doubt in the meaning of words used, recourse to other provisions of the statute is of assistance. There is no such doubt here. Considering all applicable provisions of the act, we are unable to find basis for counsel's contention that the award here should be fixed at $4800. Provisions other than those mentioned herein do not aid in clarifying the intention of the General Assembly on this matter.

Counsel for plaintiff in error say that while no cases have come to this court involving this question, it has been the practice of the Industrial Commission and lower courts to allow the full $4800 under facts such as appear here. It is not contended, of course, that such practice is binding on this court but it is urged as in the nature of contemporaneous construction, as we understand the argument. While this court is not advised by anything that appears in this record as to what such practice has been, Angerstein, in his work on Employer and the Workmen's Compensation act of Illinois, (sec. 191,) discusses the provisions of the act here under consideration, and, though he cites no cases to support it, arrives at the conclusion that the meaning of the act is to increase the maximum based on four times the average annual earnings and does not provide an increase in any specific amount. He there states that the practice of the commission is to apply such a construction. In his supplement of 1934 (page 37) he says that the Industrial Commission has recently given those provi-

sions a different construction. The intention of the General Assembly concerning these paragraphs of the act must be determined by the application of settled rules of construction. Courts are not privileged to change the plain wording of an act to make it more workable or to bring its meaning within what the court thinks is wise. Whether an act is unwise or causes hardship is not a judicial question but a legislative one. Courts may not legislate. (*City of Decatur* v. *German,* 310 Ill. 591.) In its various amendments to this act the General Assembly has not provided that payment of a specified additional sum for the support of dependent children shall be made where four times the annual earnings of the deceased employee equals or exceeds $4000, but has increased the maximum of what may be awarded in such a case based on annual earnings. We therefore cannot escape the conclusion that the construction placed upon this act by the circuit court was correct and that the award provided by the act is four times the average annual earnings of Ondes.

The judgment of the circuit court is therefore affirmed.

*Judgment affirmed.*

Mr. JUSTICE HERRICK, dissenting:

I cannot agree with either the reasoning or the conclusion reached by the majority opinion.

Subdivision (*h*)-3 of section 7 of the Workmen's Compensation act was added by the amendment of June 28, 1919, and was amended by an act approved July 3, 1931. (Laws of 1931, p. 581.) Subdivision (*h*)-1 was added by amendment approved June 28, 1919, (Laws of 1919, p. 541,) and the amounts were increased by later amendments. (Laws of 1931, p. 580.) Both subdivisions (*h*)-1 and (*h*)-3 are substantially the same as when originally adopted. Subdivision (*h*)-2 was added by an amendment approved June 2, 1927, (Laws of 1927, p. 502,) and was inserted in substantially its present form between subdivi-

sions $(h)$-1 and $(h)$-3. Section 7 made no provision before 1919 for any increase in awards because of dependent children. Subdivision $(h)$-1 of section 7 has never provided for any change in award except by increasing the minimum award. Subdivision $(h)$-2 orders specific sums paid on account of a child or children under sixteen years of age at the time of the death of the employee which are to be added to the awards that fall between the range of $2500 and $4000 provided in subdivision $(a)$. Prior thereto no increase in awards was provided because of dependent children where four times the average annual earnings of the deceased produced a sum between the range provided by subdivision $(a)$ of section 7. In 1929 the legislature amended subdivision $(h)$-2 and added a third class of three or more children under sixteen years of age at the time of the death of the employee and provided a specific additional amount to be paid in such case. This amendment also increased the maximum amounts to be paid under subdivision $(h)$-3. By the amendment of section 7 in 1931 the minimum and maximum amounts were raised in subdivision $(a)$, as were also the amounts in subdivisions $(h)$-1, $(h)$-2 and $(h)$-3. The general language, however, remained the same as before. Subdivision $(h)$-2 has always provided definite amounts, which are to be added to four times the average annual wages of deceased employees where such amounts fall within the limits of the awards of section 7.

The employer contends that the award provided by subdivision $(h)$-3 where the deceased leaves a widow and two children under sixteen years of age at the time of the employee's death is four times the average annual earnings but in no event more than $4800. It bases its claim in support of this contention on the hypothesis that the word "maximum," as used in subdivision $(h)$-3, means the "highest amount obtainable." The claimant's position is twofold: (1) That whenever four times the average annual

earnings of the deceased employee on account of whose death a liability is incurred, amounts to or exceeds a maximum of $4000 stated in the fourth paragraph, the award provided by subdivision (*h*)-3 is $4800 if such employee left a widow and two children under sixteen years of age; (2) that if there is given to the word "maximum" the meaning claimed by the employer, then with that meaning the recovery is to be construed as relating to those cases where there are no children under sixteen years of age.

Certain canons of construction have been recognized which guide and control the courts in the interpretation of statutes. The end to be achieved is to determine the legislative intent and the relief sought to be afforded or the evils to be suppressed. In construing a statute the whole act is to be reviewed, with the thought always in mind as to what was the legislative purpose in enacting the statute under consideration. Any construction which leads to an absurd conclusion, and thus thwarts the legislative desire, is to·be avoided if the act reasonably permits of a construction which accomplishes the legislative intent. While the mandatory requirements of any particular section or subdivision of a statute are not to be ignored, yet where it is apparent that a reasonable construction of the portion of the statute under. consideration requires the consideration of other portions of the act and such review leads to a logical interpretation of the act, it is the duty of the court to adopt the construction which results in making effective the legislative intent. *Patterson Pie Co.* v. *Industrial Com.* 335 Ill. 476; *Ketcham* v. *Board of Education,* 324 id. 314; *People* v. *Day,* 321 id. 552; *Louisville and Nashville Railroad Co.* v. *Industrial Board,* 282 id. 136; *People* v. *Wallace,* 291 id. 465; *Robertson* v. *Donk Bros. Coal Co.* 238 id. 344.

I believe it is appropriate to direct attention to some causes involving consideration and interpretation of statutes which have heretofore been before this court. Sec-

tion 1 of "An act to provide for the health, safety and comfort of employees in factories," etc., (Laws of 1909, p. 202,) provided that all power-driven machinery, including saws and many other tools and appliances therein named, "shall be so located wherever possible, as not to be dangerous to employees or shall be properly enclosed, fenced or otherwise protected. All dangerous places in or about mercantile establishments, factories, mills or workshops, near to which any employee is obliged to pass, or to be employed shall, where practicable, be properly enclosed, fenced or otherwise guarded." Suit was brought by an employee to recover for an injury to his right eye caused by a splinter striking the same while the employee was operating a saw for his employer. (*Forrest* v. *Roper Furniture Co.* 267 Ill. 331.) No part of the plaintiff's body came in contact with the saw. The defendant contended that the statute did not require protection for a person using a saw against injury from splinters thrown from it but the protection required by statute was against injury from coming in contact with the saw. It is obvious that such is the literal meaning and purport of the words of the statute. This court, however, sustained a judgment in favor of the plaintiff by construing the statute, notwithstanding its language, to be broad enough to include the plaintiff's cause of action, and said in that connection: "The language used by the legislature is broad enough to embrace the requirement that workmen be protected where practicable—not only from injury from coming in contact with the machinery, but also, where practicable, from injury in the use of the machinery—and it seems to us to hold otherwise would be in a large measure to nullify the statute. * * * The intent is the vital part or essence of the law, and in the construction of statutes the intent is to be ascertained and effect given to it; and this is true even though it may not be entirely consistent with the strict letter of the statute."

In answering the contention of the defendant in *First Nat. Bank* v. *Wedron Silica Co.* 351 Ill. 560, that section 15 of the Occupational Diseases act, as amended in 1923, was ambiguous, this court, speaking through Mr. Justice Orr, said: "In seeking to arrive at the intention of the legislature we will regard existing circumstances, contemporaneous conditions, what object the legislature sought to attain, the necessity of the act and the language used therein. (*Smith* v. *County of Logan,* 284 Ill. 163; *People* v. *Highway Comrs.* 270 id. 141.) We must keep in mind that the several provisions of the statute should be construed together in the light of its general purpose and give effect to the intent and purpose of the legislature.— *Public Utilities Com.* v. *Monarch Co.* 267 Ill. 528."

In *Walgreen Co.* v. *Industrial Com.* 323 Ill. 194, this court held that, notwithstanding the provisions of section 24 of the Workmen's Compensation act of 1919 to the effect that no proceedings for compensation under it could be maintained unless claim for compensation was made within six months after the accident, such limitation of time did not run against a minor so long as he had no guardian, and in that case the minor was permitted to recover compensation on a claim filed almost four years after the death of the injured employee.

The case of *Burns* v. *Industrial Com.* 356 Ill. 602, involved a claim under the Workmen's Compensation act made by a widow to recover compensation for the death of her husband, the claim being based upon section 2 of the Occupational Diseases act. The petition alleged the deceased husband had suffered an injury arising out of and in the course of his employment from inhaling fumes from poisonous chemicals, which caused his death. In that case the court said that section 2 covered three classes of occupations and the occupation of the deceased was in the third class; that section 2 included employees "engaged in any process of manufacture or labor in which poisonous chemi-

cals, minerals or other substances are used or handled by the employees therein in harmful quantities or under harmful conditions." This construction was reached by deliberately supplying and writing into the section the word "or" between the words "employees" and "engaged," in order to give meaning to the clause quoted. Without supplying the conjunction the court would have been forced to hold that the General Assembly inserted the phrase quoted without any purpose, intent or reason. In discussing the interpretation made, which was forced by the insertion of the word "or," as above set forth, Mr. Justice Shaw, speaking for the court, said: "The primary purpose of statutory construction is to arrive at the legislative intent. (*People* v. *Talbot,* 322 Ill. 416.) In order to arrive at this intent the several provisions of the statute are to be construed together in the light of the general purpose and object of the act and so as to give effect to the main intent and plan thereof as therein expressed. (*Public Utilities Com.* v. *Monarch Co.* 267 Ill. 528.) If this intention can be collected from the statute, words may be modified, altered or supplied so as to obviate any repugnancy or inconsistency with such legislative intention," etc.

One of the purposes of the Workmen's Compensation act is to afford compensation to workmen injured and to provide compensation for the dependents of those employees killed in the course of their employment, the amounts to be paid in either situation being fixed within certain definite and determined limits. It is obvious from reading the whole act that it was the legislative intent to adjust the recovery permitted, within the scope fixed by the statute, upon the basis of annual earnings of the injured or deceased employee, a greater amount being granted to those whose earnings are in the highest brackets.

The construction placed upon the act by the majority opinion in my judgment results in some rather anomalous situations. Subdivision (*h*)-1 of section 7 provides addi-

tional compensation for the dependents of those where the recovery on account of the death of the wage earner is the minimum of $2500. It fixed the total recovery at $3000 where the deceased at the time of his death left one child under sixteen years of age, $3100 where he left two children under sixteen years of age, and $3200 where he left three children under sixteen years of age. Subdivision (h)-2 provides that whenever, as provided in subdivision (a) of section 7, four times the average annual earnings of the deceased employee amounts to more than $2500 and less than $4000, the amount payable under the act in the event the deceased leaves a child or children under sixteen years of age shall be increased as follows: For one child $350, for two children $450, and for three or more children $650. If, therefore, we give to the statute the construction adopted by the majority opinion and assume that the average annual earnings of the deceased, George Ondes, had been $990 rather than $1010, as they actually were, the recovery of the petitioner would be four times his average annual earnings plus the sum of $450 authorized by the provisions of subdivision (h)-2 on account of the deceased leaving two surviving children under sixteen years of age at the time of his death, so that the award to the petitioner in the hypothetical case stated would be $4410, or $370 more than the award to the petitioner here by the court below; also in a supposititious case where the average annual earnings of the deceased leaving two children under sixteen years of age at the time of his death were $1000 the recovery would be limited to $4000, and such children would have no benefit of any of the provisions of subdivision (h)-1, (h)-2 or (h)-3. The effect of the construction given by the majority opinion is to penalize the dependents of the deceased employee because of the fact that his average yearly earnings were slightly in excess of $1000. To construe the statute so that the widow and the children under sixteen years of age of the

deceased employee whose average annual earnings were less than $1000 will receive greater compensation than the widow and such children of a deceased employee whose average annual earnings were $1000 or more, would in my judgment be to arrive at a highly absurd result.

It will be observed that the word "maximum" is not used in subdivision (a) but the amount of compensation payable is "a sum equal to four times the average annual earnings of the employee, but not less in any event than $2500 and not more in any event than $4000." It is apparent that the word "child" or "children," as used in subdivision (a), relates to dependent children, regardless of age. No distinction is made between minor and adult children, but the controlling factor is the question of dependency and legal liability to support. The legislature manifestly had in mind that in addition to this general allowance as provided in subdivision (a) some provision must be made for the rearing of those children who at the time of the death of the wage earner are under sixteen years of age, hence the provisions of subdivisions (h)-1, (h)-2 and (h)-3.

With the rules of construction and the legislative intent in mind, I take up the interpretation of those portions of the statute involved in the decision of the present proceeding. There are two rational and logical constructions that readily can be given the application of subdivision (h)-3 under the rules of construction heretofore pronounced by this court and which have hereinbefore been stated: (1) Giving to the word "maximum" the meaning claimed by the employer, "maximum" as here used refers to subdivision (a) of section 7, relating to a recovery where four times the average annual earnings of the deceased leaving a widow and dependent children did not equal $4000, but where such average annual earnings equal or exceed $1000, then the "maximum" is increased by the provisions of subdivision (h)-3 in the case of minor chil-

dren under sixteen years of age at the time of the death of the employee. To come within the purview of subdivision $(h)$-3 two factors must exist: $(a)$ The annual wage must equal or exceed $1000; $(b)$ the deceased must leave surviving him two children under sixteen years of age at the time of his death. On proof of these two essentials subdivision $(h)$-3 becomes operative and the maximum provided by subdivision $(a)$ of section 7 is increased to $4800. (2) The word "maximum" has several different meanings. Webster's New International Dictionary (2d ed. 1935) gives as the first definition of maximum, "the greatest quantity or value available in a given case." The word "maximum" has no fixed, definite meaning at common law or by way of established precedents. Webster's Dictionary gives three different meanings of the word "maximum." The one given by the majority opinion is the third in order as the word is defined in such dictionary. Giving to the word "maximum" the sense in which it is most commonly employed and applying it to subdivision $(h)$-3, that subdivision dispels any idea that a graduated scale of recovery in cases where the average annual earnings exceeded $1000, and limiting the recovery to $4800 in any event, was therein contemplated, but, on the contrary, subdivision $(h)$-3 automatically fixed the recovery at $4800 in those cases where the average annual earnings of the deceased were $1000 or in excess of that amount and the wage earner died leaving a widow and two children under sixteen years of age at the time of his death. There is thus given force and meaning to the language of subdivision $(h)$-3 so far as applicable here and the legislative intent is accomplished. It is obvious that subdivision $(a)$ furnishes the basis upon which the award is to be made in the case of a surviving widow and those children, irrespective of their ages, of the deceased employee whom he was legally liable to support. There the amount of compensation is limited to $4000, with the further provision

that no recovery in that situation should be less than $2500. Where the compensation payable is limited to $4000 as to recovery, generally, by the widow and dependent children, regardless of age, the provisions of subdivision $(h)$-3 become operative only in the case of children under sixteen years of age. If four times the average annual earnings of the wage earner equals $4000 or more and he leaves a child or children under sixteen years of age at the time of his death, the compensation is to be augmented in accordance with the terms of subdivision $(h)$-3. By the provisions of subdivision $(a)$ standing alone the award cannot exceed $4000, but by applying the provisions of subdivision $(h)$-3 the amount is increased to $4800. This construction of the statute is logical and reasonable and attains the obvious intent of the act. The petitioner is entitled to an award of $4800.

The judgment of the circuit court of Shelby county should be reversed and the cause should be remanded to that court, with directions to enter a judgment confirming the award made by the Industrial Commission.